## W. B. SMITH v. THE STATE.

No. 14071.   Delivered October 14, 1931.
Reinstated and Reversed April 6, 1932.

The opinion states the case.

*Crane & Hartwell,* of Raymondville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for assault with intent to murder, punishment being assessed at two years imprisonment in the penitentiary. Our state's attorney calls attention to the recognizance entered into pending appeal, a defect in which makes a dismissal necessary.

The recognizance in question departs materially in verbage from that prescribed by article 817, C. C. P.; notwithstanding that, it might be held good were it not for its failure to require appellant "to abide the judgment of the Court of Criminal Appeals of the State of Texas." In lieu of the requirement just quoted the present recognizance makes the appearance of appellant in the court below "subject to notice of appeal in the Criminal Court of Appeals at Austin, Texas." We can not regard such language as substantially complying with article 817, C. C. P. Nowhere in the present recognizance does appellant bind himself to abide the judgment of this court.

Many cases upon the point will be found collated in the notes under article 817, Vernon's Ann. Tex. C. C. P., vol. 3.

If appellant should desire to further prosecute his appeal he may have fifteen days from this date to file in the court below and bring to this court a bail bond pending appeal as required by article 818, C. C. P.

The appeal is dismissed.

*Dismissed.*

ON MOTION FOR REHEARING.

MORROW, JUDGE.—It seems that proper recognizance was taken by the court, but improperly recorded by the clerk. The motion to reinstate appeal is granted. Assuming that this court has jurisdiction to

consider the appeal on its merits, the following remarks are made:

The manner of the preparation of the statement of facts renders it extremely difficult for this court to comprehend the state of the evidence adduced upon the trial. In the document before us, are colloquies between court and counsel, and numerous objections to the particular phases of the evidence. The matters mentioned properly form no part of the statement of facts and tend only to encumber and obscure that which the law intends to make plain and simple. We entertain some doubt as to the authority to consider the statement. See article 760, C. C. P., 1925, also Acts of 42nd Legislature (1931), 1st Called Session, chap. 34, p. 75. However, we have gone through the matter to the best of our ability and are giving the appellant the benefit of the doubt as to the authority of this court to consider the document.

The attack on the indictment because of the absence of an averment that the assault was committed with malice aforethought is untenable under the authorities. See Small v. State, 116 Texas Crim. Rep., 41, 32 S. W. (2d) 860, and precedents therein cited.

Mrs. Margaret Smith, wife of the appellant, was called as a witness in his behalf. In substance, her testimony was to the effect that after she had gone to her room to retire she saw Hammers near the window and told him to leave. She saw nothing more of him for about an hour, at which time she heard her husband say, "Why did you come back?" * * * "You want more trouble?" Hammers pushed Smith and knocked him down. Upton then said, "Why did you knock him down?" * * * "Don't do that again. If you do, I will take it up." The witness then saw that Hammers was cut. She said that at no time did she call for help. On cross-examination she said she did not know whether she talked to Sheriff Snow or not. She did not remember whether she had talked to the sheriff about the trouble that day or not. She also said, "I never did talk to him." She was also asked on cross-examination if it was not a fact that she had made certain remarks to the sheriff with reference to the incident attending the injury to which her testimony referred. The questions propounded were answered in the negative. Objection was interposed upon the ground, in substance, that the witness being the wife of the appellant and having been asked upon her direct examination no question touching her conversation with the sheriff, the state was precluded by article 714, C. C. P., 1925, which forbids the use of the wife as a witness against the accused on trial, from demanding an answer to the question mentioned. We note from the bill that all of the questions were answered in the negative and that no proof of evidence adverse to the appellant was elicited. However, it is apparent from the bill and from other parts of the record that the object of the prosecution was to lay the predicate for the impeachment of the testimony of Mrs. Smith.

From Bill No. 2 it appears that the sheriff, L. D. Snow, was called by the state and testified over appropriate objection that on the night of the affray in which Hammers received the injury, or on the morning thereafter, Mrs. Smith said to him that her husband was about to strike her with a club and that Hammers interposed and kept him from it. In the same conversation the sheriff also said that Mrs. Smith told him that at the time of the encounter all the parties were drinking; that Smith and Hammers were .drunk; that she tried to get them to go to bed and behave themselves; that Smith became angry and tried to beat her, when Hammers interfered, and during the fight that ensued Smith cut Hammers' throat; *that she asked the sheriff if there was any way she could get home as she wanted Smith kept in jail; that she asked the sheriff to protect her against the appellant.*

The wife of the appellant having been introduced by him and having given testimony showing that she was an eye-witness to the encounter in which Hammers was injured, the appellant was not in a position to complain of cross-examination of an impeaching nature germane to the direct examination of his wife. The principle stated is fortified by many decisions of this court which are collated in Vernon's Tex. C. C. P., vol. 2, pp. 764-766, subds. 9 and 10 of the notes. Cases which are deemed analogous on the facts to the present are the following: Glasser v. State, 90 Texas Crim. Rep., 116, 233 S. W., 969; Soderman v. State, 97 Texas Crim. Rep., 23, 260 S. W., 607; Gaunce v. State, 97 Texas Crim. Rep., 365, 261 S. W., 577; Moehler v. State, 98 Texas Crim. Rep., 238, 265 S. W., 553; Houseton v. State, 83 Texas Crim. Rep., 453, 204 S. W., 1007; Bell v. State, 85 Texas Crim. Rep., 475, 213 S. W., 647; Briscoe v. State, 87 Texas Crim. Rep., 375, 222 S. W., 249.; Gray v. State, 88 Texas Crim. Rep., 1, 224 S. W., 513; Eason v. State, 89 Texas Crim. Rep.,638, 232 S. W., 300; Gutierrez v. State, 96 Texas Crim. Rep., 327, 257 S. W., 889. It is thought that in the cross-examination of Mrs. Smith there was no transgression of the rule stated above, as illustrated by the authorities cited, save as to that part of her testimony italicized above.

The testimony of the appellant was that he and Hammers and a boy called Joe Upton were in a drinking party. Appellant and Hammers fought with fists in the yard. Mrs. Smith told appellant to go to bed and also told Hammers to leave. Upton and the appellant went into the house, and after a while Hammers came back. From the appellant's testimony we quote: "I was mad and crazy drunk, and I don't know, I might have cursed him when he came into the door. We met in the floor and went to fighting again and he knocked me down; and when I got up he was coming at me again and I reached at the table and got this razor, and as he met me, I cut him with it. I cut him one time."

From Hammers' testimony it appears that Smith was intoxicated; that

Hammers was attacked by Smith, who attempted to use a pistol. Hammers' ran out of the house and heard Mrs. Smith holler. He then returned to the window. Mrs. Smith hollored, "You better quit." Smith and his wife were scuffling over a gun. Hammers said: "I run up and grabbed the club they were scuffling over, and I slung Smith down and helped him up, and he shook hands with me and said, 'Calvin, you are my friend.'"

Upton was crying and said to Hammers that he had no right to sling Smith down. Upton then jumped on Hammers. Then Smith ran up behind Hammers and said, "You son of a bitch," and cut him with a razor. Upton's testimony coincided with that of Smith and his wife.

From bill of exception No. 4 the following quotations are taken:

"I went to the house and Smith brought two bottles of beer out there and I drank it. We ate supper and after supper he asked me to go to the barn with him and I went, and his truck was sitting in front of the barn; and he (meaning Smith) said: 'I haven't got any gasoline in this truck and I want to ride tonight', and he said: 'Let's go and steal the gasoline.' Thereupon the district attorney asked the following question:

"Q. He said, 'Steal the gasoline,' and the witness answered, 'Yes.'"

\* \* \* \* \*

"Q. When he asked you to go and help him steal some gasoline, what did you say?"

\* \* \* \* \*

"When the witness answered as follows: 'I told him, I said, no, Smith, you are too drunk to be riding around, and I am not stealing any gasoline tonight.'"

At each point timely and adequate objections were made to the testimony to the effect that the appellant proposed to go and steal gasoline. The objections were overruled, as was likewise the motion of the appellant to withdraw the testimony from the consideration of the jury. This the court refused to do, and his action in the refusal is made the subject of exception. The proposal to steal gasoline is not in any remote manner connected with the offense on trial, and apparently illustrates nothing other than a reflection upon the character and disposition of the appellant in disclosing his willingness to commit the offense of theft. The state of the evidence is not such as would warrant the conclusion that the testimony showing that the appellant wanted to commit the theft of gasoline was harmless. The conflict of evidence bearing upon the issue of self-defense is acute. The appellant's testimony that the blow he struck was while he was a subject of attack is supported by the testimony of the other persons who were present. The alleged statement that he was willing to steal gasoline, or wanted to steal gasoline, may have had a potent influence with the jury in rejecting his theory and accepting that developed by the state's witness Hammers.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*