# FEBRUARY 27, 1946

WILLIAM DODSON v. THE STATE.

No. 23264. Delivered January 9, 1946.
Rehearing Denied February 27, 1946.

186

The opinion states the case.

*Cunningham, Lipscomb & Cole,* of Bonham, for appellant.

*Olan R. Van Zandt,* County Attorney, *George T. Avery,* and *H. A. Lampman,* Assistant County Attorneys, all of Sherman, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is rape. The punishment is assessed at confinement in the state penitentiary for a term of five years.

The evidence adduced upon the trial, as reflected by the record, shows an aggravated case of rape of a girl twelve years of age. It would serve no useful purpose to set out all the salient facts proven on the trial.

Appellant brings forward eleven bills of exception, some of which relate to the admission of evidence, some of the exclusion of it, and some to the argument of the prosecuting attorneys.

Bills of Exception Nos. 1 to 5 inclusive, relate to the same subject matter and will be considered and disposed of together.

Bill No. 1 shows that the prosecuting attorney, on direct examination of the prosecutrix, had her identify the dress which she was wearing on the night in question which had some blood on it; that it had no blood thereon at any time prior to the alleged assault in the State of Oklahoma; that the dress was not torn prior thereto but was torn by appellant while having sexual intercourse with her in the State of Oklahoma. Appellant objected to this evidence on the ground that it showed an extraneous offense and was prejudicial.

Bill No. 2 shows that the prosecutrix testified that after they had driven to a beer joint in Oklahoma and from there a short distance down a side road, W. J. Shaw and the Mitchell woman got out of the automobile and walked away a short distance, leaving appellant and the prosecutrix sitting in the rear seat of the car; that during this time appellant assaulted her by having carnal knowledge of her; that she resisted with all her strength. To this testimony appellant interposed an objection based on the ground that it showed an extraneous offense, was prejudicial, and was an effort to give the details of the transaction. The court overruled the objection to which appellant excepted.

Bill No. 3 shows that the prosecutrix testified:

"When my dress was torn, I was on the other side of the little house on that road in Oklahoma. The car was stopped. I was in the back seat of the car. Tunk Dodson was in the back seat of the car with me. The car was parked on the road by the Log Cabin. There were no houses there. Tunk Dodson tore my dress, this dress right here (indicating)."

Appellant objected to this testimony on the same ground that he did to the testimony shown in Bill No. 2. The court overruled the objection and appellant duly excepted.

Bill No. 4 shows that the prosecutrix testified that appellant had sexual intercourse with her in the car while it was parked on the side road in Oklahoma; that she fought him and he hit her; that he hit her before he succeeded in accomplishing his objective; that it hurt her very bad and she bled; that she called for help but no one responded. This all occurred the same night on which he later had another act of sexual intercourse with her on this side of Red River in Grayson County, Texas, something like an hour after the first act. Appellant objected to each and all of said statements on the ground that it was an effort to establish an extraneous offense, giving the details thereof, and that

it was prejudicial. The court overruled the objection to which appellant duly excepted.

Bill No. 5 shows that appellant introduced W. J. Shaw, the companion of Mrs. Mitchell on the night in question, and on direct examination confined his interrogatories to what transpired in Texas and not as to what transpired in Oklahoma on the night in question; that the State, on cross-examination of said witness, elicited from him the fact that while no persons were in the car except the prosecutrix and the appellant during the time the car was parked in Oklahoma, the prosecutrix and appellant were lying on the back seat with appellant on top of her. Appellant again objected to this cross-examination of said witness on the ground that it was an effort on the part of the State to prove an extraneous offense and was prejudicial. The objection was overruled, to which appellant timely excepted.

While it is true that ordinarily evidence of extraneous offenses is not admissible, yet there are exceptions to the rule, and when these exceptions exist, the evidence does become admissible. In the instant case, the evidence showed that W. J. Shaw, Wanda Lee Mitchell, Ray D. Jones, and appellant were together in a car; that they desired the companionship of another girl; that Wanda Lee Mitchell went into a picture show which the prosecutrix was attending for the purpose of inducing her to go with them. However, before she went into the show, Mrs. Mitchell remarked to Shaw in the presence of the appellant who was nearby, that the prosecutrix was rather young and that if they took her out, they might get into trouble, to which he (Shaw) replied, "Well, she is going of her own accord." After they got up into Oklahoma and drove out on a side road and parked the car, Mrs. Mitchell and Shaw left the car and walked some distance away, leaving appellant and the prosecutrix on the rear seat and Ray Jones on the front seat; that soon appellant began to assault the prosecutrix, which she resisted and called for help. Jones, instead of going to her rescue, got out of the car and walked to the rear of it; that when Mrs. Mitchell and Shaw were returning to the car, he intercepted them and told them not to go to the car, whereupon they walked away; after they came from Oklahoma back into Texas and entered Grayson County, appellant, who was in the rear seat of the car with the prosecutrix while Shaw, Jones and Mrs. Mitchell were in the front seat, again attacked her; that she again struggled and sought to prevent the act of intercourse; that she called for help but neither of the parties responded to her call. It appears to us that when all of this testimony is taken together, it tends

to show a conspiracy on the part of Shaw, Jones, Mrs. Mitchell and appellant to prostitute the young girl. Consequently, the acts, conduct and declarations of each of the parties in furtherance of the common design during the existence of the conspiracy are admissible against each and all of them. Therefore, whatever transpired in Oklahoma, being a part and parcel of the conspiracy, became admissible as evidence upon the trial of what occurred in Grayson County, Texas, on the night in question, because the conspiracy apparently still existed when they entered Grayson County inasmuch as the co-conspirators declined or refused to render to her any assistance when she called upon them to do so but permitted appellant to consummate the object of the conspiracy. If a conspiracy existed, it continued until they had released the prosecutrix. Under the circumstances here disclosed, we believe that the acts and conduct of the parties in the State of Oklahoma, as well as in the State of Texas, were a part of the original design of the co-conspirators which would make proof of such acts and conduct admissible on the trial for the offense with which appellant was charged. See Wharton on Criminal Evidence, (11th Ed.) Vol. 2, p. 1182, sec. 699; Branch's Ann. Tex. P. C., secs. 693 and 694. Moreover, if it was a continuous assault, the acts and conduct of the appellant in the State of Oklahoma, as well as those in the State of Texas, would become admissible against him.

Underhill on Criminal Evidence (3rd Ed.) sec. 152, lays down the rule as follows:

"If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be made without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme."

See Phillips v. State, 139 Tex. Cr. R. 574; Battles v. State, 63 Tex. Cr. R. 147; Billings v. State, 131 Tex. Cr. R. 479; Pierce v. State, 87 Tex. Cr. R. 379.

The careful trial judge, in his charge to the jury, limited and restricted them in their determination of appellant's guilt to the offense, if any, alleged to have been committed by him in Grayson County, Texas.

By Bill of Exception No. 6 appellant complains of the testimony elicited from Mrs. Wanda Lee Mitchell to the effect

that she stated to the witness Shaw that they were liable to get into trouble by taking this twelve-year-old girl, "that she was kind of young and we might get into trouble," to which the witness Shaw replied, "that Mildred Fay Pointer was going of her own accord." Appellant objected to this testimony on the ground that it was hearsay and prejudicial and was made in the absence of the defendant. Appellant was in the car during the time this conversation was carried on between Shaw and Mrs. Mitchell, who were standing just back of the car at the time. We think this evidence was admissible for two reasons: (1) Appellant was close enough and could have heard the conversation, and if he did, it would be admissible against him; and (2) if there was a conspiracy between Shaw, Mrs. Mitchell, Jones and appellant to prostitute this little girl, it was equally admissible against him.

We think the matters complained of in Bills of Exception Nos. 7 and 8 showing what took place in the State of Oklahoma and what occurred in Grayson County, Texas, were admissible in evidence upon the same theory as that disclosed in Bill No. 6.

By Bill of Exception No. 9 appellant complains of the remarks made by the Assistant County Attorney in his opening argument to the jury to the effect that "he had respect for the defendant's attorney prior to the examination of the witness, Dr. Arthur Gleckler, when said attorney asked the doctor whether or not there were any germs indicating gonorrhea or any female diseases found by him upon examination of the State's witness, Mildred Fay Pointer, to which the doctor replied, 'there were not,' whereupon State's counsel further stated that the defendant and his counsel were not satisfied with committing the offense of rape on the injured party but wanted to slur her character and charge her with having gonorrhea." To which argument counsel for defendant in due time excepted. The court sustained the objection and instructed the jury to disregard the argument. Notwithstanding the court's action, appellant contends that it was so highly prejudicial to his rights that the court could not effectively withdraw the same from the minds of the jury. We are of the opinion that the argument was a proper deduction from the evidence as developed by the appellant himself, and the court having in writing instructed the jury not to consider the same, this certainly cured any error, if any was committed with respect thereto.

Bill No. 10 shows that the State undertook to introduce in evidence the purported written confession of the defendant, to

which he objected because it was not executed under the formalities of the law to make it admissible in that it shows that the man who secured the statement was not present when the warning was given, if it was; that at the time the purported confession was signed the defendant was in jail and, therefore, it was not admissible against him; nor does it provide therein that the confession could be used in evidence against him. The court sustained the objection and excluded the purported confession. In the court's qualification of the bill it is stated that no exception was taken to his ruling at the time. The court further certifies that the appellant's contention that the court in effect told the jury that the defendant had confessed was new matter to him and was first called to the court's attention in the amended motion for a new trial and in this bill. Consequently, under the qualification of the bill ,which appellant accepted, he is bound thereby. In our opinion, the bill fails to reflect any reversible error.

By Bill No. 11 appellant complains of the closing argument of the County Attorney to the jury to the effect that "there was testimony sufficient to show the guilt of the defendant and that if the defendant had not been proven guilty in the case, the court would have given the jury an instructed verdict to turn the defendant loose and that no such instruction was given." Appellant objected to said argument and the court verbally instructed the jury to disregard the same. This bill is qualified by the court and contains the argument of the County Attorney as follows:

"Yes, Gentlemen of the Jury, the defendant committed the act as the State has alleged in the indictment. That act was committed in Texas between Red River and Denison, Texas, on the night of April 17, 1945. The Pointer girl was not then and there the wife of the defendant. And I will say that in spite of all the attempts of counsel for the defendant, I think you have the just common sense to appreciate the fact that all the elements alleged in the indictment have been completed. Had it not, Gentlemen of the Jury, this court would have instructed you to return a verdict of 'not guilty.' "

To which counsel for appellant objected because it was prejudicial and conveyed to the jury what the court thinks about the matter, and requested the court to instruct the jury to disregard it. The court complied with the request and instructed the jury as follows: "Disregard it and do not consider it for any purpose whatsoever." Having thus withdrawn from the

jury's consideration the argument complained of, we are unable to reach the conclusion that appellant was injured thereby.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant insists that we misconstrued his bill of exception number one in disposing of it in our original opinion, in that the complaint was not against the proof that the dress of prosecutrix was torn and bloody, but was against the acts of the prosecuting attorney regarding the dress after the court had withdrawn it from the jury.

This bill is in question and answer form without a certification of necessity therefor, and had our attention been called to this the bill would not have been considered, but having discussed it in our original opinion we again examine it in the light of appellant's motion for rehearing.

It is apparent from the bill that the State's attorney while examining the prosecutrix had in his hand the dress which witness was wearing on the night she was assaulted. She identified as blood, stains on the dress called to her attention, and torn places in the dress, which blood and tears she said were not in the dress when she left with appellant and his companions; and testified that appellant and another of the boys tore that dress. At this point the State without objection from appellant introduced the dress in evidence. No objection was interposed on the ground that the dress was bloody. On cross examination it developed that the blood stains and torn places were the result of the mistreatment of witness in Oklahoma, and not after they crossed the river back into Texas. Because of that fact and on that ground appellant asked the court to instruct the jury "not to regard the dress in evidence." The bill recites that the motion was sustained and the "dress withdrawn from the sight of jury." It is apparent that the dress was again taken from the sack by the State's attorney who held it in his hands in front of the jury, and propounded other questions regarding the blood on

the dress. Objection was interposed that "the waving of the dress before the jury was prejudicial." The court sustained the objection, directing the State's attorney not to wave the dress, but to place it back in the sack, which was done. After the court had withdrawn the dress as evidence the State's attorney should have been governed by the court's ruling, and not have again exhibited it before the jury. However, we fail to discover anything which came to the knowledge of the jury by such act which they did not already know from what had occurred. Under the circumstances we think the incident should not be regarded as presenting reversible error.

In his motion for rehearing appellant calls to our attention that in disposing of bill number eight we confused it with others which complained of admitting in evidence proof of what occurred in Oklahoma. Bill number eight relates to an entirely different matter. It recites that appellant was a stranger in Grayson County, as was also Mrs. Jones whom appellant used as a witness to the good reputation of appellant. This witness was not even cross examined, but appellant sought to show by her that she was related to several prominent people who were well known in Grayson County. Upon objection from the State the proposed evidence was excluded. It is appellant's contention that he was entitled to show this in order to "give weight to her testimony." Appellant used ten or twelve witnesses to prove appellant's good reputation, and the issue was not contested by the State. We are aware of the rule which permits a witness to be supported in the event the adverse party attempts to impeach the witness, or is cross examined in such way as to raise an issue as to truth of the testimony given by said witness, and also as to the rule which permits an inquiry as to the business or vocation of a witness, but we are not aware that our court has ever held it admissible to go to the length here proposed. The general rule with the limitations thereon will be found referred to in Phillips v. State, 19 Tex. App. 158; Crook v. State, 27 Tex. App. 198, (214); Payne v. State, 40 Tex. Cr. R. 290; Warren v. State, 51 Tex. Cr. R. 598; Jeffreys v. State, 51 Tex. Cr. R. 566; Coleman v. State, 90 Tex. Cr. R. 297; Jacobs v. State, 42 Tex. Cr. R. 353; Doucette v. State, 45 S. W. 801.

We remain of the opinion that under the facts of this particular case evidence of what occurred in Oklahoma was properly admitted. The court dealt with a somewhat similar state of facts in Mann v. State, 187 S. W. (2d) 665. The court limited a possible conviction to a transaction in Grayson County. The same

limitation is found in the Mann case applicable to the facts there present.

Believing no reversible errors appear in the record, appellant's motion for rehearing is overruled.